FREDERICK W. ROTTMANN ET AL., APPELLANTS, V. H.
H. BARTLING ET AL., APPELLEES.

1.  **Religious Society:** SCHISM: JURISDICTION OF COURT OF
    EQUITY.   Where there is a schism in a religious society a court
    of equity does not attempt to enforce the peculiar faith or doc-
    trines of either party, though their existence and nature may in-
    cidentally be involved in an inquiry relative to the rights of
    such society.   All that it does is to enforce the observance and
    execution of an ascertained trust.

2.  ——: SEPARATION.   Where a separation has taken place, a
    court in determining the question of legitimate succession will
    adopt the rules of such society, and enforce its polity in the
    spirit and to the effect for which it was designed.

3.  ——: CHANGE OF CONSTITUTION.   Where a church has been
    organized and a constitution adopted and signed by its mem-
    bers, under which the church has existed for a series of years,
    such constitution can be changed only in the manner provided
    therein, or by the rules or by-laws of such society; and where
    the constitution provides for a three months' notice of any pro-
    posed change in the constitution, a change effected without giv-
    ing such notice is invalid and of no effect.

4.  ——: ——: CASE STATED.   Where certain members and
    officers of the Evangelical Lutheran church, without giving the
    notice required by the constitution and complying with its
    terms, joined " *Die Erste Deutsche Evangelische Zions Gemeinde,*"
    *Held,* That having ceased to be members of the Lutheran
    Church, they were not entitled to the possession of the property
    of such church.

APPEAL from the district court of Otoe county.   Tried
below before POUND, J.

*S. H. Calhoun,* for appellants, cited: *Ass. Reformed
Church v. Theological Seminary,* 4 N. J. Eq., 77.   *Lucas v.
Case,* 9 Bush, 302.   *Groesbeeck v. Dunscomb,* 41 How. Pr.,
302.   *Ferraria v. Vasconcelles,* 23 Ill., 56.   *First Presbyte-
rian Church v. Cong. Society,* 23 Iowa, 567.   *Winebren-
ner v. Colder,* 43 Penn. State, 244.   Perry on Trusts, Secs.
727, 734.   *Feizel v. Trustees,* 9 Kan., 592.

*Frank T. Ransom* and *John C. Watson,* for appellees, cited: *Lucas v. Case,* 9 Bush., 297. *People v. German Church,* 53 N. Y., 103. *German Reformed Church v. Seibert,* 3 Penn. State, 282. *Den v. Bolton,* 12 N. J. Law, 206. *Burrel v. Church,* 44 Barb., 282. *Miller v English,* 2 Halst. Ch., 304.

MAXWELL, CH. J.

The plaintiffs allege in their petition "that they are residents of Nebraska City in Otoe county, state of Nebraska; that on the 20th day of January, 1867, at said Nebraska City, the said First Evangelical Lutheran church in Nebraska City, Nebraska, was duly organized under the laws and regulations of the general synod of the Evangelical Lutheran church of the United States, and was then duly incorporated under the general incorporation law of the then territory, now state, of Nebraska, by the election of a board of trustees, consisting of Eli Huber, Charles C. Walbaum, F. Templin, H. H. Petring, A. F. Mollring, Frederick W. Rottmann, and John Stromer, and adopted a constitution in accordance with the rules and regulations of the general synod; that under said constitution two of said trustees are called deacons, and two of them are called elders, and two of them are called trustees, and that said officers, together with the pastor, constitute the council of said congregation, and have charge of its affairs, and control and custody of its property, and hold all the same in trust for said congregation, subject to and in accordance with the rules and regulations of said general synod; that shortly after said organization, the said congregation purchased lots one and two in block eight, as designated on the recorded plat of South Nebraska City, now a part of Nebraska City, in Otoe county, Nebraska, and during said year of 1867 erected thereon a commodious building for public worship to be therein held

according to the doctrines, beliefs, and discipline of the said Evangelical Lutheran church, and for such other purposes as said congregation might properly see fit to use said building in connection with ordinary church work of said Evangelical Lutheran Society.

"That said property was so purchased, and said church edifice so erected thereon by members of said Evangelical Lutheran church at that time, and with the further aid of certain funds furnished by the 'Church Extension Society' of the Evangelical Lutheran church of the 'General Synod of the United States,' the same being an organization of the said Evangelical Lutheran church for the purpose of aiding in the erection of church edifices in the United States for the use and benefit of congregations and organizations of said particular sect or denomination, and that the same has been so used until about the happening of the events hereinafter mentioned.

"That 'Die Erste Evangelische Zion's Gemeinde,' to-wit: The First German Evangelical Zion's congregation, is a religious organization, different and distinct from the Evangelical Lutheran church aforesaid, is not in affiliation with the general synod of said Lutheran church, nor with those who purchased said property and contributed to the price thereof, and to the erection of said church edifice, nor with the said Church Extension Society, which aided in said purchase and erection, and is not subject to the said general synod, or in any way controlled thereby; that on or about the 18th of December, 1884, the above named defendants, combining and confederating with other persons to these plaintiffs unknown, but whose names, when discovered, plaintiffs ask may be added hereto as defendants, with apt and suitable words to charge them herein, did wrongfully and fraudulently, and in violation of the rights of these plaintiffs, and other members of said Evangelical Lutheran church, undertake to unite said Evangelical Lutheran church with said First German Evangelical Zion's congre-

gation, and to take possession of said property, and to transfer the same to the possession and control of said Zion's congregation, and did at said meeting agree among themselves to change said organization to and to become a part of said Zion's congregation, and to deprive these plaintiffs and the said Evangelical Lutheran church in Nebraska City, Nebraska, of said property, and of all right, title, and interest therein, and to prevent them from worshiping therein, or otherwise using said property as and for the use of the said Evangelical Lutheran church; that on the evening of the 13th of February, 1885, at about 8 o'clock P.M. of said day, after these plaintiffs and certain other members of said Lutheran church had quietly and peaceably entered said church edifice, and were engaged in religious services, and also in holding a business meeting, and before said religious services were concluded, under the direction and temporary charge of Rev. Joseph W. Kimmel, a regularly ordained minister of the said Evangelical Lutheran church, the said Rev. J. W. Kimmel having been in writing duly instructed and authorized by the president of the Nebraska Synod of said Evangelical Lutheran church to look after the interests of said church and its property in said Nebraska City, the said defendants and their said confederates did enter said church building violently, tumultuously, and, as these plaintiffs verily believe, some of them armed, and did interrupt said meeting, and did with violence eject him, the said Rev. J. W. Kimmel, from the room, and did then and there by their violent and outrageous conduct, and by blowing out the lights with and by which said church was then lighted, stop and end said meeting, and did refuse to allow, and did actually prevent, said business meeting or said religious services from being completed, although the said Rev. J. W. Kimmel read aloud his said written authority; that said defendants and their said confederates seized the possession of said property, and still retain the same; that said defendants and their

said confederates have seized the custody and control of all the records and books of said Evangelical Lutheran church, and the keys to the said church edifice, and still retain the same, and refuse to give them up to the regular officers of said church, who are the only proper and legal custodians thereof, and they threaten to retain possession of all said property, and to prevent the said Evangelical Lutheran church from holding divine services in said building to-morrow, the 15th of February, 1885, and at all times thereafter, and claim to hold said property for the use and benefit of the said Zion's congregation, and refuse to allow these plaintiffs and the said Evangelical Lutheran church any possession of or control in any of said church property, and to prevent them from ever hereafter holding services or public worship as such Evangelical Lutheran church therein; that the mode of worship and the religious belief, in accordance with the tenets of the said Zion's church, is not the mode of worship, nor the religious belief, nor the discipline which these plaintiffs, nor the said Evangelical Lutheran church for which they are trustees, profess nor prefer and desire, nor the one for which said property was purchased and said church edifice erected, and that they have no other place of worship in said Nebraska City, nor is there any other place in said Nebraska City solemnly dedicated to public worship as these plaintiffs and said church believe that said edifice should be dedicated, nor is there another regularly ordained minister of said church now here to conduct divine worship except the said Rev. J. W. Kimmel, so far as these plaintiffs know, and that their rights in the premises demand prompt and immediate protection. Plaintiffs ask that said defendants, and all persons acting by, through, under, or in connection with them in any way, may be restrained forever from keeping these plaintiffs and the said Evangelical Lutheran church out of the possession of said property, or of the key or keys whereby access may be obtained thereto, and of the

records, books, papers, and documents of said Lutheran church, and from any longer retaining any of the property of any description which they have taken from the said organization known as the First Evangelical Lutheran church in Nebraska City, Nebraska, and from any interference with or interrupting the meetings or the worship of said church, or setting up any claim or claims as such ' Zion's congregation' to the property of said 'Lutheran church,' or from preventing these plaintiffs and the said Lutheran church from having, holding, and enjoying the sole and uninterrupted use and possession of said property, and all that pertains thereto, and for such further and other relief in the premises as shall seem agreeable to equity and good conscience."

In their answer, the defendants admit " that on the 20th day of January, 1867, the First Evangelical Lutheran church in Nebraska City, Nebraska, was duly organized, as in the petition stated, and admit the election of the persons therein named as a board of trustees, and that a constitution was adopted, as in the petition alleged, and that under said constitution two of said trustees are called deacons, and two are called elders, and two are called trustees, and that said officers, together with the pastor, constitute the council of said congregation, and have charge of the affairs and control and custody of its property, and hold the same in trust for said congregation ; but deny they hold the same for said congregation, subject to and in accordance with any rules and regulations of the general synod of the Evangelical Lutheran church of the United States, and allege that the said general synod has no right, authority, or jurisdiction over the said property of said congregation, nor can said general synod dispose of the property of said congregation, nor can it prevent the said congregation from disposing of the same in any manner the said congregation see fit; admit the purchase by the said First Evangelical Lutheran church of the property

described in the petition, and that a church edifice was erected upon said property, but deny that said property was purchased or said church edifice erected through any means furnished by the general synod, or by any aid received from any church extension society, and deny that said property was purchased through any aid received from said synod or said society. They allege that said synod or said society loaned to said First Evangelical Lutheran church, money, and to secure the repayment of the same and interest, took a mortgage from said church concerning the said real estate and the church edifice thereon, and they allege the said debt was paid with interest by the said First Evangelical Lutheran church, and the said synod and the said church extension society have no longer any claim thereon ; they deny that the said synod or the said church extension society furnished any money or any means to aid the said First Evangelical Lutheran church in purchasing said property, or in erecting the church edifice thereon, other than as above set forth, and deny that the said synod or the said church extension society have any right, title, claim, or interest of any kind in or to said property. They admit the said church edifice was erected as a building of public worship to be therein held according to the doctrines, beliefs, and discipline of said Evangelical Lutheran church, and for such other purpose as said congregation might see fit to use the said building in connection with ordinary church work of said Evangelical Lutheran church ; that the said First German Evangelical Zion's congregation is a religious organization, as hereinafter set forth more fully, but deny that it is different or distinct from the Evangelical Lutheran church, and that it is not in affiliation with the general synod of the Evangelical Lutheran church or with those who purchased said property, and contributed to the price thereof and to the erection of said edifice.

"They deny that, on the 18th of December, 1884, or at

any other time, that they wrongfully and fraudulently and in violation of the rights of said plaintiffs and other members of said First Evangelical Lutheran church, undertook to unite said Evangelical Lutheran church with said First German Evangelical Zion's church; that they undertook to take possession of said property, and to transfer the same to the possession and control of said Zion's church or congregation; that they agreed among themselves to change said congregation to and become a part of said Zion's congregation or church, and to deprive the plaintiffs and the said Evangelical Lutheran church of the said property, and of all or any right, title, or interest therein, or to prevent them from worshiping therein or otherwise using said property as and for the use of said Evangelical church; deny that they, on the 13th of February, 1885, or at any other time, entered the said church building violently or tumultuously and armed, and thus interrupted the plaintiffs and others when lawfully worshiping therein; deny that they prevented or attempted to prevent the plaintiffs worshiping in said church building, but admit that they prevented them from transacting any business therein; deny that they seized possession of said property, but allege that defendants were actually and lawfully in the possession of said building, and that they still lawfully retain possession of said building; deny that they seized the records, books, papers, and other property of said First Evangelical Lutheran church, and allege that defendants were in the lawful charge, possession, and custody of said properties, and still retain such lawful possession, and deny that they refuse to give up the said properties to the legal custodians, and allege that they are the legal custodians of all the property of the said First Evangelical Lutheran church of Nebraska City, and that as such they are and have had uninterrupted possession of the said church building and all other properties of said church.

"They deny that they threatened to prevent the said First

Evangelical Lutheran church from holding divine worship
in said building, but allege that on the 18th day of De-
cember, 1884, they were the duly elected and acting trustees
of the said First Evangelical Lutheran church in Nebraska
City; that on that day a meeting had been called, pursu-
ant to notice, for the purpose of amending the constitution
of the said last-named church in the matter of the name of
the church and the congregation only; that defendants,
William Luecke, Albert Schnitker, and Frederick W.
Rodenbrock were duly elected trustees of said Evangelical
Lutheran church, and were duly installed and entered upon
the duties of said offices and trust on October 28th, 1883,
and under the constitution of said last-named church, their
terms of office expire on November 1st, 1885; that the de-
fendants, Adam Schafer, Herman H. Bartling, and Henry
Fastenau were duly elected trustees of and for said church
for the term of two years, and on the 28th day of October,
1883, were duly installed as such, and entered upon the
duties of said offices; and that under the constitution and
laws of said church their terms of office expire on Novem-
ber 1st, 1886; and that said election was duly and regularly
held by said church association at the time and in the
manner required by the constitution, rules, and customs of
said church association, and said plaintiffs, or a majority
of them, participated therein, and have acquiesced therein
since the date thereof, until the date of the disturbances
mentioned in the petition; that two of said defendants are
trustees, two of them are deacons, and two are elders duly
installed and in charge of the affairs and property of said
church and are in possession of said church building and
the pews and furniture therein, and of the service owned
by said church, and of all books and other property be-
longing to the said church, and have been so in charge and
possession thereof ever since the 28th day of October, 1883,
at which date their predecessors in office turned the same over
to them, at which time, nor ever since, has there been any

question raised by any one in or out of said church as to the right of defendants to administer said offices until the same was raised in this proceeding; that defendants and their predecessors in office have been in the peaceable possession of said church and its property since the date of its organization, to-wit, in the year 1867, until the present time, and the said plaintiffs have at no time been in the lawful possession of said church or any of its property; said plaintiffs are not the trustees of said First Evangelical Lutheran church, nor are they or either of them trustees thereof, nor do they or either of them hold an office in said church, and there has been no election of them or either of them to the office of trustees, or to any other office in said church, and no meeting of said society has ever been called at which the said plaintiffs or any of them were elected to any office in said church.

" Defendants are the legal and lawfully elected trustees and are in the lawful possession of the said First Evangelical Lutheran church and of all its affairs and property, and hold the same in trust for said society; that on the 18th day of December, at the said meeting called as required by the constitution and regulations governing said Lutheran church, it was unanimously resolved by the said congregation to change the name of the said church from that of the First Evangelical Lutheran Church of Nebraska City to the First German Evangelical Zion's Lutheran Congregation, and the said constitution was changed and altered in that particular, but in writing up the proceedings had in thus changing the name of said church for the purpose of filing a certificate thereof in the county clerk's office of Otoe county, Nebraska, and in writing up the minutes of said meeting the word 'Lutheran' was unintentionally left out by the secretary, and proceedings have been taken by said society to have the said minutes and the said certificate amended, and the said word 'Lutheran' will, as soon as the rules and regulations governing the meetings

of said society permit, be inserted in the name of said church; that it was the understanding and intention of said society and of all the members present at said meeting, that the word 'Lutheran' was to be a part of the said name of said church association, and there was no intention to change the doctrines, modes of worship, or disciplines in said church, but it was and is now the desire of defendants that the doctrines, modes of worship, and church discipline in said congregation shall be and remain the same as it has been heretofore from the date of the organization of said First Evangelical Lutheran Church, and defendants and those acting with them do not intend to change the doctrines, mode of worship, or church discipline in any particular from that which has already been practised in said First Evangelical Lutheran church, and the said church constitution as so amended does not assume or pretend to change the doctrines to be preached to said congregation, nor to transfer the said church congregation to any faith other than the faith of the said Lutheran church; that at said meeting, on the 18th of December, there were present all the members of said First Evangelical Lutheran church who were in good standing, and there was none who dissented from the changes sought by said meeting to be made in its constitution; that the said congregation of said Evangelical Lutheran church is composed exclusively of Germans, all of whom speak and understand the German language, and the persons who contributed to the purchase of said church site, and the church building thereon, were Germans, and the said church has always been one in which the German language has been spoken exclusively and it was the desire of the said congregation that the word 'German' should appear in the name of said church, which was also inserted in the name of the church at said meeting; that the plaintiffs have conspired among themselves to have the English language spoken in said church, at least during a portion of the

time of service, and to have the church exercises and cere-
monies conducted and administered in the English lan-
guage, which language is not spoken or understood at all
by a portion of said congregation, and by a portion thereof
is not readily understood; that to this end and with the
intent to so introduce the said English language into said
church, the said plaintiffs have attempted to take forcible
possession of said church, and have at times broken the
doors of said church building open, and without any
authority the said plaintiffs have called to take the said
church one J. W. Kimmel, and the said J. W. Kimmel
has entered into the conspiracy with the said plaintiffs with
the intent to aid and assist them in their said plot, and in
pursuance of their said conspiracy the said plaintiffs, in
company with the said J. W. Kimmel, proceeded to said
church edifice on the 13th day of February, 1885, and
with force and violence did unlawfully enter said church
in the absence of defendants, the officers and trustees of
said church, and in the absence of the said congregation,
and that said entry and breaking were made and done in
the night time, and defendants and other members of the
said church association learning that such unlawful break-
ing and entry had been made and that it had been made
with the intent to take forcible possession of said church
building and the properties of said church, went to said
church building while plaintiffs and the said Kimmel were
in the said church, and entered the same in a peaceable
manner and did not interfere or interrupt the said plaint-
iffs or the said Kimmel while engaged in worship, though
plaintiffs and said Kimmel had no right or authority to
hold services therein; that after the services were con-
cluded the said Kimmel claimed to be the pastor of said
First Evangelical Lutheran church, and he and said plaint-
iffs attempted and commenced to exercise the rights, duties,
and functions of said church congregation and church offi-
cers, and thereupon defendants and other members of said

congregation of the said First Evangelical Lutheran church ejected and removed said plaintiffs and said Kimmel from said church building, having first requested them to withdraw from the same, and upon their refusal ejected them, using only sufficient force for that purpose; defendants deny that they or any of them were armed, nor was any one with them armed, and allege that the allegations in the petition stating any of them or any of the congregation who accompanied them were armed, are wholly and absolutely false in every particular; that the said Geo. F. Kregel, as they verily believe, was armed for the purpose of terrifying defendants and the said other members of said congregation, and was about to draw the said weapon from his pocket at the time defendants requested the said Kimmel and said plaintiffs to withdraw, when defendant Bartling cautioned him not to do so or have any trouble, whereupon said Kregel desisted and refrained from drawing said weapon; that said Kimmel has not been chosen, called, elected, or appointed by the said First Evangelical Lutheran church to act as the pastor thereof, and he and the said plaintiffs are seeking to place him, the said Kimmel, in charge of said church and said congregation, unlawfully and contrary to the rules and regulations of said church and against the wishes of said congregation; that under the rules, practice, and under the constitution governing the said congregation, whether it is called by the old or the new name, pastors for said congregation are chosen by said congregation, and no synod, whether the General Synod of the United States, or the General Synod of North America, has any authority to place any pastor over or in charge of said congregation, but the said congregation is an independent body with the right, power, and authority to choose its own pastor, preaching, practicing, and owning the faith of the Lutheran church; that under the said constitution of the First Evangelical Lutheran church, and under the constitution of the congrega-

tion thereof under the new name given to said congrega-
tion, said F. W. Rottman, said Kregel, John Teten, and
Frederick W. Petring are not in good standing in said
church because and for the reason that none of them have
for more than two years contributed to the support of said
church, though they and each of them are amply able to.
contribute to the support thereof, and said Myers and said
Noelting are not considered members of said congregation,
whether under the old or new name, and they are not
members thereof as they have never been received into.
said congregation and have not signed the constitution of
said. church; that not one of said plaintiffs is entitled to
vote for church officers of said congregation by reason of
the facts aforesaid, and are by the provisions of the said
constitution as it was then, and now is as amended, disqual-
ified from holding office or voting at any election for church
officers, and they and each of them have been so disqual-
ified for more than than two years from voting or holding
office in said church.

"That Art. VII. of the constitution, as it was, and as it.
exists now, is the same. Sections 1 and 2 are as follows:

"'1.    All congregational elections must be published by
the church council to the congregation at least two weeks.
before the election.

"'2.    At these elections only such persons shall be enti-
tled to vote who are in full communion with the church
and have signed the constitution, who submit to its gov-
ernment and discipline regularly administered, who have
within the year previous communed—unless providentially
prevented, and who have contributed according to their
ability and engagements to all its necessary expenditures.'

"That said plaintiffs are all, and each is, disqualified from
voting or holding office in said congregation, for the reason
that none of the plaintiffs have within a year communed in
said church, and they were so disqualified at the last elec-
tion for officers, though they were not refused the right to

vote nor debarred from voting by any of the defendants or said congregation, but they refrained from voting or absenting themselves from such election; that on November 26th, 1882, said Rottman was a deacon in said congregation, and had been for some time such officer therein, and on that day he tendered his resignation to the congregation and withdrew from the council of said church, and his said resignation was accepted by the said congregation; that on February 6th, 1883, the said George F. Kregel asked for leave to withdraw from the membership of said congregation, and asked for a certificate of dismissal from the said church, and the same was allowed and issued to him, and he has never been reinstated to membership in said congregation since that time; that the said Henry Noelting, on October 24th, 1880, was, at an election held by said church, elected to the office of deacon in said congregation, and thereupon he was installed into said office, when it was learned that he was not a member of said congregation, nor a member of any Lutheran church, which fact he admitted, and a new election was ordered and held to fill the vacancy; that he has not been received into said church as a member by the said congregation since then; that said plaintiffs are alone in their efforts to seize the said property, and are not supported by even a respectable portion of said congregation, and are not supported by any member of said congregation in good standing in said church, so far as defendants have been able to learn; that said congregation is in charge of said church through their said trustees, the defendants, and the plaintiffs have no right therein, either as officers or members, because of the facts aforesaid; that on the said 18th of December, 1884, the following provisions were in the church constitution, to-wit:

" 'ART. I.—*Of the Name.*—The name of this church shall be " The First Evangelical Lutheran Church of Nebraska City.'

" 'ART. II.—*Doctrinal Position.*—This church, in accord-

ance with the doctrinal basis of the General.Synod of the Evangelical Lutheran Church in the United States, and in the words thereof, receives the word of God as contained in the canonical scriptures of the Old and New Testaments as the only infallible rule of faith and practice, and the Augsburg Confession as a correct exhibition of the fundamental doctrines of the Divine Word and of the faith of our church, founded upon that word.'

"'ART. IV.—*Of the Pastor.*—The pastor of this church shall be a member of some synod in connection with the General Synod of the Evangelical Lutheran Church in the United States.'

"That on said 18th day of December it was unanimously resolved at said meeting to change and amend said articles I., II., and IV. so that they should read as follows, and a resolution so amending them was unanimously framed by said congregation, to-wit:

"'ART. I.—*Name.*—The undersigned have associated themselves together as a religious society under the name of the First German Evangelical Zion's Congregation in Nebraska City, in Otoe county, Nebraska.

"'ART. II.—We profess to be a Christian society, believing with the Apostle Paul, 1st Cor. iii. 11, that no other foundation can be laid than that as laid in Jesus Christ; we profess to be an Evangelical society, considering ourselves members of the Evangelical church of Christ which takes the Holy Scriptures as the word of God, as the only true doctrine of faith, and the exposition of the Holy Scriptures as laid down in the Lutheran and Reformed church, namely:  The catechism of Luther and the Heidelberg catechism, as near as they correspond.  In their difference we hold to the Holy Scriptures relating thereto.'

"'ART. IV.—The pastor of this congregation shall be a member of the German Evangelical Synod of North America.'

" Defendants allege that said two names designated but one and the same body of people, to-wit :   The congregation worshiping in the church building described in the petition, of which body defendants are the trustees and hold and own said property to the use and benefit of said congregation to be used and disposed of as the said congregaton shall direct, whether it order the same as the first named society or the second."

The plaintiffs in their reply say that they do not claim that the General Synod of the Lutheran church has authority over the property, or can dispose of the same, but allege that the property was purchased by the original organization for the purpose of worshiping in accordance with the tenets of the church of which the synod is the representative ; that the Church Extension Society of said Lutheran church did aid in the erection of said building, and while the money advanced to said organization has been refunded, yet the Church Extension Society donated the use thereof without interest, and the General Synod of the Lutheran church supported the pastor of the church in question for a long time ; that on the 18th of December, 1884, the defendants and those acting with them did unite with said Zion's congregation, and did ordain that said congregation " shall adhere to the faith of the Evangelical Christian church ;" that plaintiffs do not desire to unite with said Evangelical Christian church, or with said Zion's congregation, and do not desire to have settled over them a pastor who is a member of the Evangelical Synod of North America, but desire still to adhere strictly and faithfully to the doctrines, discipline, and tenets of the Lutheran church.

There are a number of other allegations in the reply, in which the plaintiffs claim the right to said church property and deny the right of the defendants' to the possession of the same.

On the trial of the cause the court found "that the de-

fendants, Herman H. Bartling, Frederick W. Rodenbrock, Henry Fastenau, Albert Schnitker, Adam Schafer, and William Luecke, and Louis Hobine, were at the commencement of this action, and now are, the legal trustees and council of the First Evangelical Lutheran church of Nebraska City, and as such trustees and council are entitled to the possession, care, custody, and control of the property of said church consisting of the real estate and other property described and referred to in the pleadings herein, as provided by the constitution of said church.

"And the court doth further find that the new amended constitution purporting to have been adopted on the 18th day of December, 1884, was not framed and adopted in accordance with the provisions of the constitution of said church, but in violation thereof, and is invalid and of no effect, and that the defendants should be restrained from observing or conducting the affairs of said church under said new or amended constitution, wherefore it is considered, ordered, adjudged, and decreed by the court, that the defendants Herman H. Bartling, Frederick W. Rodenbrock, Henry Fastenau, Albert Schnitker, Adam Schafer, and William Luecke and Louis Hobine are the legal trustees and council of the First Evangelical Lutheran church of Nebraska City, and as such trustees and church council are lawfully in the possession of the property belonging to said church, to-wit: Lots one (1) and two (2) in block eight (8) in South Nebraska City, a part of Nebraska City, in Otoe county, Nebraska, together with the church edifice and other buildings and improvements thereon, and all property in the said church edifice, and the church communion service, and are lawfully entitled to remain and continue in the possession thereof and to direct and manage the affairs of said church.

"And it is further ordered and decreed by the court that said defendants, as trustees and church council aforesaid, be and they hereby are restrained from observing or conduct-

ing the affairs of said church under the said new or amended constitution purporting to have been adopted December 18th, 1884. To so much of this finding and decree as finds the defendants are the legal trustees of said church, and that they are entitled to the possession of the church property, the plaintiffs except, and to the finding that the new or amended constitution purporting to have been adopted December 18th, 1884, is invalid, and that portion of the decree restraining defendants from managing the affairs of said church under said new or amended constitution defendants except.

"It is further ordered by the court that the plaintiffs and defendants each pay half the costs of this action, the whole costs being taxed at the sum of $156.13."

The plaintiffs appeal.

On the trial the plaintiffs introduced a deed from C. F. Holly and wife to the trustees of the First Evangelical Lutheran church of Nebraska City, dated January 20th, 1867. The plaintiffs then introduced the constitution of said church, as follows:

"ARTICLE I.—*Its Name.*—This congregation shall be known by the name The First Evangelical Lutheran Church in Nebraska City, Neb.

"ART. II.—*Its Doctrinal Basis.*—This congregation, in harmony with the doctrinal standpoint of the Evangelical Lutheran General Synod of the United States, accepts the word of God as contained in the canonical books of the Old and New Testaments as the only infallible rule of faith and practice, and the Augsberg Confession as a correct exhibition of the fundamental doctrines contained in the word of God.

"ART. III.—*Membership.*—All such persons who in their infancy have been baptized, and after previous instruction in the doctrines and duties of the word of God and upon their confession of faith have been confirmed, shall be considered as regular members of this congrega-

tion.    Also such persons, though not baptized in their infancy but afterwards, after previous instruction and upon their confession of faith and baptism, shall be received as members.    Furthermore such persons who have been members of some other Lutheran congregation or Evangelical church may be received as members upon presentation of a certificate of honorable dismission from the congregation to which they belonged, or upon a repeated public confession of their Christian · faith.    Persons, whether from this or another congregation, who have been excommunicated shall have no rights until they have repented and have again been received as regular members.

"2.    The principal duties of the members are the following:    They shall live a humble, holy, and useful life; attend divine services faithfully; partake of the Lord's supper regularly; hold devotional and family worship. They shall endeavor, by an exemplary life and godly conversation, to lead the unconverted to Christ; to care for the instruction of the youth; to contribute, according to their means, to the maintenance of public worship, to the support of the pastor, to help the poor, etc., etc.; and shall heartily participate in all orderly and scriptural ways which the congregation devises in order to ameliorate human suffering and extend the kingdom of Christ upon the earth.    It shall be the duty of parents to bring up their children in the fear and admonition of the Lord, to instruct them in the doctrines of the church and to submit to its regular appointed means.    And when young members have reached the proper age and are possessed of the natural abilities it is their duty to appear as worthy communicants at the Lord's table.

"ART. IV.—*The Pastor.*—1.    The pastor of this congregation shall be a member of some synod which stands in connection with the General Synod of the Lutheran church in the United States.

"2. The principal duties of the pastor are the following: To preach the gospel; to administer the sacrament; to instruct the youth in the congregation in the doctrines and duties of the scriptures, in the catechism, and in other ways according to Lutheran usage; to visit the sick and all that are in need; to warn the sinners; in short to keep the vow of his ordination or licensure faithfully, and give himself wholly to winning and leading souls to Christ.

"3. Should the pastor at any time be accused of teaching unbiblical doctrines or leading an immoral life, then shall the church council (if there be trustworthy evidences) bring the accusation before the synod, and inform the president of synod of the facts, and at the same time give notice to the accused one.

"4. Of all the official duties, as baptisms, confirmations, weddings, funerals, receptions, and admission of new members, cases of church discipline, etc., the pastor shall keep a record in a book, which the congregation is to provide, which shall remain her property, and at all times be open for inspection. In case of a vacancy the secretary of the council shall keep the church book until the congregation is again supplied with a pastor.

"ART. V.—*Of the Church Officers.*—1. This consists at present of two elders, two deacons, and two trustees. At the first election one elder, one deacon, and one trustee shall be elected for one year, the rest for two years. But after this first election all the officers shall be chosen for two years, so that one elder, one deacon, and one trustee may step out of office yearly, whose vacancies are to be filled at the annual election, which is to be held on ......... These newly elected officers shall, as soon as possible, be installed according to the formula of the synod to which the congregation belongs. Those who according to Art. VII., Sec. 2, are not entitled to vote, cannot be elected.

"2. The duties of the elders consist, among others, in the following: To live an exemplary life, faithfully to par-

ticipate in all the inner and outer affairs of the congregation, to visit the Sunday and week schools, to assist the pastor in visiting the sick, in holding devotional meetings, and in his endeavors to maintain peace and harmony in the congregation.

"3.    The duties of the deacons consist, among others, in the following : To live an exemplary life, to participate in all the inner and outer affairs of the congregation, especially to take up the collections at public worship, to distribute gifts which the poor are to receive, to see to it that the pastor receives sufficient support, to assist at communion and baptisms in securing the necessary things, as bread, wine, and water, and in general to see to it that all the necessaries belonging to the outer affairs of public worship are cared for.

"4.    The duties of the trustees consist, among others, in the following: To live an exemplary life, to participate in all the affairs of the congregation faithfully; to see to it that the property of the congregation, which belongs to it now or which may belong to it in the future, be kept in good condition, in so far as their duties correspond with Art. VI., Sec. 6, and therewith be construed.

"ART. VII.—Of the Church Council.—1.    The church council consists of the pastor, or pastors, elders, deacons, and trustees.

"2.    The church council has the general oversight of all the secular and spiritual affairs of the congregation, and shall endeavor conscientiously and faithfully, according to biblical principles, to promote the interests of the same.

"3.    It shall exercise church discipline over all such members who live an immoral life and foster false doctrine. To this end it is empowered to call up any member to give an account, and to cite others before it as witness, as the case may be.    It shall be authorized, in case any member has given offense, first, privately to give admonition; or, if necessary, to call him to account; and, when these meas-

ures prove ineffectual, to suspend or excommunicate such member; viz., to deny him all rights of membership, according to apostolic injunctions. The council shall further be empowered to restore all church privileges to such as have been suspended or excommunicated, after they have acknowledged their sins and sincerely repented. Every act of excommunication or restoration shall publicly be made known to the congregation. Should a church member, in reference to his rights, not be satisfied with the decision of the council, he may then appeal to synod with which the congregation is in connection. But in every such case the accuser must, within two weeks from the time the decision took place, inform the church council of the fact. He must also state the cause of his dissatisfaction and the grounds for his appeal.

"4. The church council elects its own secretary and treasurer. The pastor, in virtue of his office, acts as chairman.

"5. The church council may, at any time when important questions, which the constitution states, arise, call a congregational meeting. The council shall have the right to decide as to the legality of such meeting; and when two-thirds of all voting members insist on the holding of such meeting, it shall in all cases take place.

"6. The church council shall have full possession of the church property, and shall endeavor to preserve the same for the use of the congregation, but it shall not be empowered to burden the same with mortgage or heavy debts, to sell it, or make alterations to any great extent, unless a majority of the votes of the members be cast at a regular meeting, which has been held according to previous announcement.

"7. The council shall annually elect one of its members who enjoys the confidence of the congregation to represent the same at synod, whose expenses, as also those of the pastor, shall be paid out of the treasury of the church.

"8.  The council shall from time to time receive such persons as members who, after previous examination or upon the recommendation of the pastor, are found to be worthy to participate in the rights and privileges of a Christian congregation.

"9.  The council shall keep a correct list of all persons who are considered regular members, which list is to be carefully examined and corrected at the annual meeting of the council, which is to take place on the first Monday in January.  At this meeting the treasurer shall lay before the council a detailed report of all the receipts and expenditures, and this report is to be given into the hands of a committee for examination; of all the moneys in the hands of the treasurer the council may at any time decide as to its disposal.  The pastor, together with half the number of the other members of the council, or, in the necessary or voluntary absence of the pastor, two-thirds of the members, constitute a quorum.

"10.  The council shall hold regular quarterly meetings on the first Monday in January, April, July, and October; but it may also hold special meetings at any time, either by the pastor called together, or when two-thirds of the members of the council, or one-fourth of all the voting members of the congregation, demand it.

"ART. VIII.—*Of Elections and Congregational Meetings.*—1. Every congregational meeting must be made known to the congregation two weeks before.  In case of vacancy in church council a meeting shall be called at once to fill the same.

"2.  At these meetings only such persons shall be entitled to vote who are in full communion membership, who have signed the constitution and who submit to regular church discipline, who have partaken of the Holy Communion during the year—unless providentially prevented, and who contribute according to their means to all necessary expenditures of the congregation.

"3. All elections, whether for the pastor or members of the church council, must be held by ballot, and a majority of all votes cast shall be sufficient, except in the election of a pastor a two-thirds vote must be cast.

"4. At the election for members of the church council the council shall nominate as many persons as are to be elected, and the congregation may, if it chooses, nominate a like number.

"5. In case of resignation or death of a pastor, the secretary of the council shall inform the president of synod of the fact, and ask him for advice. The council shall then invite an Evangelical Lutheran pastor or pastors to preach for the congregation, whereupon an election shall take place, at which, for one person only, votes shall be cast. Should this person not receive two-thirds votes, then the name of another may be taken up.

"ART. VIII.—1. This constitution shall be signed by all who stand in regular communion membership according to Art. III.

"2. This constitution cannot be altered or improved unless it be at a meeting of the congregation legally called together by the council and made known three months before, at which meeting two-thirds votes of all the members present shall be sufficient for any alterations or improvements."

Frederick W. Rottman testifies, in substance, that he is one of the original trustees; that defendants have all the original papers and documents of the church; that he and the other gentlemen named as trustees contributed to the purchasing of the property; church was built in 1868. We got help from the general synod. That is the same synod a part of whose constitution has been offered. Eli Huber was the first pastor. We obtained assistance and the money was used for purchasing the property and erecting building for First Evangelical Lutheran church of Nebraska City, and that particular

church occupied the same to about Jan., 1885. The Church Extension society of this denomination loaned us in all $600 without interest. The church had no affiliation with any other church organization up to about January, 1885. On the evening of Feb. 13th, 1885, myself and several other male and female members of the original church went into the building, using the key that for many years had been in Mr. Petring's possession, and accompanied by Rev. Mr. Kimmel, a regular Lutheran pastor, and were holding a religious and business meeting when the defendants and several others entered and ordered us out, and finally ejected us and put out the lights and stopped our meeting. Kimmel had authority from the president of synod and read it to them before they ejected him. The services were broken up by defendants. Since then the Evangelical Lutheran church of Nebraska City has had no possession or control of the property. Went to church on a Sunday afternoon after this, but defendants would not permit me to enter. There is no other church of this denomination in Nebraska City, and no other place for us to worship except private houses. The denomination known as Evangelical Lutheran church had held possession of this property from the time it was built up to the time we were ejected as aforesaid, and all the preachers settled over the congregation were connected with the general synod.

Geo. H. Meyers testified that he acted as clerk of meeting of the Evangelical Lutheran church, held at Nebraska City, Jan. 31, 1885; minutes show that Rev. J. W. Kimmel was chairman, and G. H. Meyers clerk, and that Noelting, Rottman, Teten, Petring, and Meyers were elected trustees of said congregation to fill the vacancy caused by the withdrawal of the former officers, they having united with the First German Evangelical Zion's congregation. Witness then detailed the proceedings on the night of the 13th of February, 1885, substantially as testified to by Rottman,

and that Bartling, Rodenbrock, and others have had possession ever since. Petring, son of one of the original trustees, was away at school when church was organized in 1867; was elected trustee in January, 1885. The property, both real and personal, including books, papers, church records, communion service, etc., have been in possession of Bartling and party since that night. Rev. Kimmel is attached to the Nebraska synod, that is in connection with the general synod of the Lutheran church of the United States. Noelting was a member of the church, Teten was a member. At the time of the differences in 1880, when they all united again, witness acted as clerk of the meeting, and voted. Rottman was a member, had been trustee and elder. Plaintiffs and the people in general had noticed by the records that defendants had placed themselves on record as having ceased to be Lutherans, and had become Evangelicals, and consequently that property ceased to have proper officers, therefore plaintiffs as deacons and trustees were authorized to take possession by their election at the hands of the members of the church. Defendants had been in possession as trustees of the old church, but they had withdrawn and ceased to be Lutherans, and were acting under authority of Evangelicals, and were unlawfully in possession, and plaintiffs acted by authority of the Lutheran church. The plaintiffs had put a lock on that church prior to Feb. 13, by authority of the Lutheran church. Rev. Kimmel had not been " called " by the congregation, but was sent here by the president of synod of which that church is a member. A part of the congregation withdrew in 1880, but afterwards reunited with the church, and always afterward acted with the Lutheran church. There was no objection to defendants, nor interference with them prior to the time they changed the constitution and united with the Zion's congregation, and no attempt to take possession of the property so long as they acted under the state and general synod. When a part

withdrew in 1880, there was no controversy as to the trustees or doctrines, it was only a question about preaching English or German, and they afterwards reunited and called Rosenstengel as pastor. There are perhaps Evangelicals in the original congregation, but they always acted with the Lutherans.

John Teten testified: Was chosen trustee in the Lutheran church on Jan. 21st, 1885. Rev. Kimmel is a Lutheran preacher connected with the synod of this state, and is an officer of the synod, and is settled over a Lutheran congregation at Auburn. Witness then detailed the proceedings on the night of February 13th, 1885. There was on that night no lock but the old lock, which had been there since the church was built. Witness is a member; the old church record shows when he united. Parties went there, among other things, for an election. Knew that Bartling and Rodenbrock had been trustees and had gone into another church. The new lock was put on to keep out parties who didn't belong there—such parties as went off to another church. Only one officer was elected that night of Feb. 13th, 1885. On that night some of the other party were armed with sticks, broom handles, ax handles, and clubs.

Plaintiffs then offered in evidence a duly certified copy of the proceedings of the Zion's congregation, dated Dec. 18th, 1884, and filed for record Dec. 19th, 1884, showing that at a meeting of First Evangelical Lutheran church of Nebraska City, Bartling was made chairman and Schafer secretary, and it was resolved by a unanimous vote of those present to change the name from First Evangelical Lutheran church to First German Evangelical Zion's congregation of Nebraska City, and that the by-laws, articles of association, rules and regulations of said Lutheran church as amended and revised be spread on the records of Zion's congregation and be adopted.

Rev. Kimmel testified that he is a Lutheran preacher;

that he and the First Lutheran church of Nebraska City are attached to the state synod, and that to the general synod of the United States; was present at meeting of state synod in September, 1884. Witness stated difference between Lutheran and Reformed church or Evangelicals to be particularly on the subject of the Lord's supper. The Evangelicals believing Christ present spiritually, and the Lutherans believing in actual presence. A further difference is that the Lutherans accept the Augsburg confession as correct in itself, and the others accept it only so far as it squares with their interpretation of the Scriptures, that is, they decline to receive that confession as an absolute interpretation. None of these denominations are admitted as members of any Lutheran synod, and their pastors are in no way whatever connected with or under control of any Lutheran synod. Witness then gave in detail the proceedings of the night of Feb. 13th, 1885. None of these parties acting with Bartling at that time are members of the First Lutheran church of Nebraska City. Was authorized to act by letter from president of synod and under seal of synod dated Jan. 14th, 1885, which letter has since been mislaid and cannot be found, and showed that letter to Bartling. Bartling pushed him out after he showed him the letter. The Church Extension Society is a corporate body made up of members of the general synod to help needy churches and to build churches. It has no connection with the Evangelical church; it furnishes no help outside of the general synod of the Lutheran church, and it is so stated in all applications. At the first meeting but five trustees had been elected, and we were going to elect the sixth that night; that was what the meeting was called for. Meyers was secretary of the board of trustees. That letter was all the authority witness needed. The president of synod has authority to appoint a man to act where there is no pastor. Defendants were not asked to that meeting because they were not members of the Lutheran church.

The testimony of Rev. Eli Huber was taken by deposition, as follows: "Reside in Philadelphia, and have been a Lutheran minister connected with the general synod since 1858; pastor of First Evangelical church of Nebraska City, from 1866 to 1876; since then the pastors have been connected with the same synod. Synod adopts the Augsberg confession and Luther's catechism; do not use the Heidelberg catechism, nor do any Lutheran churches, it is the standard of the Reformed church; it differs from Luther's catechism mainly on the subject of predestination and the Lord's supper; the latter was the cause of separation of the Protestant church into Lutheran and Reformed. The general synod and the German Evangelical synod of North America are two entirely distinct bodies, having no connection with each other and no church or minister can be connected with both. No minister or church would be received into Lutheran synod without accepting the Augsberg confession in its unaltered form, that is the confession of A.D. 1530. The Evangelical synod of North America is not connected in any way with the general synod, or with any other Lutheran body. This field was, in 1866, assigned to the Alleghany synod, and I was sent as missionary to establish the First Evangelical Lutheran church of Nebraska City. During the first four years of my pastorate in Nebraska City I received from the Alleghany synod in all $2,300. I also collected from the churches belonging to general synod $350 for the erection of this building, and the Church Extension society of general synod loaned $500 on three years' time without interest for the erection of this church."

Rev. Conrad Huber testified: "Reside in Saunders county, Nebraska; am president Lutheran synod of Nebraska; same is subject to general synod of the United States. The membership of the First Evangelical Lutheran church of Nebraska City as per last official report was 116. The Evangelical synod of North America is an en-

tirely different organization from general synod of Lutheran church. There is and can be no connection between these two bodies and still retain their identity. There is no such body existing as the Evangelical *Lutheran* synod of North America. There has never been any application made to me relative to the vacancy in the Nebraska City church. When I heard of the condition of affairs there, I instructed Rev. Kimmel to go to Nebraska City, and look after the interests of the church and its property. He is a regular member of our synod."

Rev. W. F. Eyster testified : " Have been a Lutheran pastor or professor in Lutheran institutions for forty-four years. Am acquainted with its doctrines, discipline, and organization. Have some acquaintance with tenets and doctrines of Zion's congregation of Nebraska City. The basis of that belief is as follows :

" We profess to be a Christian society believing with Apostle Paul, 1 Cor. iii. 11, that no other foundation can be laid than is laid on Jesus Christ. We profess to be an Evangelical society, considering ourselves members of the Evangelical Church of Christ, which takes the Holy Scripture as the word of God, as the only true doctrine of faith, and the exposition of the Holy Scriptures as laid down in the Lutheran and Reformed churches, named the catechism of Luther and the Heidelberg catechism, as near as they correspond. In their difference we hold the Holy Scripture in relation thereto.

" The doctrinal basis of the Evangelical Synod of North America as laid down in their constitution is as follows :

" ' The German Evangelical Synod of North America, as a part of the Evangelical church, is that community which believes that the Holy Scriptures of the Old and New Testament is the word of God and the only infallible rule of faith and life, following the interpretation of the Holy Scriptures as laid down in the symbolical books of the Lutheran and Reformed churches, which principally

are the Augsberg confession, the Lutheran catechism, and the Heidelberg catechism, as far as the symbolical books agree with another. In their variances the Evangelical Synod of North America adheres to the Holy Scriptures, and reserves for itself the freedom of conscience which prevails in the Evangelical church on these important points.'

"The Lutheran church makes subscription to the Augsberg Confession as a correct exhibition of the fundamental doctrines of the divine word, an express test of admission to her ministry and synodical conventions. The Evangelical church ignores it as such exposition. The Evangelical church further differs from the Lutheran church in that they make the catechism of Luther co-ordinate with the Heidelberg catechism as authority in matters of faith, and may accept or reject its teachings on the important points on which the two catechisms differ. It further differs in allowing her ministers or members to hold doctrinal views accordant or discordant with the Lutheran confession, according to individual judgment.

"The Heidelberg catechism was drawn up in 1562 to set forth the distinctive doctrines of Zwingli and Calvin as against the Roman Catholic church and certain points of Luther's views. The variances between the two catechisms respect mainly the presence of Christ, the nature and efficacy of the sacraments, baptism, and especially the real presence of Christ at the Lord's Supper.

"The Evangelicals believe that Christ is present on earth only with respect to his divine nature. The Lutherans believe that his human and divine nature are inseparably united in one person, with regard to the sacraments. The Heidelberg catechism teaches that there are visible signs and seals appointed by God. The Lutheran catechism teaches that there are efficacious signs and effective means of grace.

"These are the points of difference between the doctrinal teachings and symbolical books, and which originally led to the separation of the Protestant church into Lutheran and

Reformed, and has kept them in existence as separate ecclesiastical organizations.

"Am a member of Nebraska synod. That synod claims and exercises over its individual churches and congregations the authority given by the formula of government and discipline prescribed by General Synod.

"District synods combine mandatory and advisory powers. It is the duty of district synods to see that the government and discipline prescribed are observed by all the congregations and ministers within their bounds; to receive appeals from decisions of church council and affirm or reverse them; to form and change ministerial districts; to tend to any business relating to the churches which may be brought before them; and to provide supplies for vacant pulpits.

"Chapter VIII., section 6 of formula, provides that when a congregation shall refuse to observe the resolutions of synod or provisions of formula, it shall be excluded from connection, and no other synod nor Lutheran minister nor licentiate shall take charge thereof without permission of the president.

"The Zion's congregation of Nebraska City is not on the official roll of the synod, nor could it be so received under its doctrinal basis.

"The Evangelical Synod of North America has not connection with the Nebraska synod or the General Synod of Lutheran Church. That synod has its own organization, institutions, and publications distinct from all other denominations. No person can be a member of both organizations at the same time.

"No pastor who subscribes to Art. II. of constitution of Zion's congregation could belong to any Evangelical Lutheran synod.

"I understood the church at Nebraska City to have been originally organized as a constitutional part of the Evangelical Lutheran synod, and that a portion of the congre-

gation still adhere to the doctrinal basis and government
of the Evangelical Lutheran church, and is now a member
of the synod under which that church was originally
organized."

The following are the articles of incorporation of the
First German Evangelical Zion's Congregation, introduced
in evidence by the plaintiffs:

"NEBRASKA CITY, NEB., Dec. 18th, 1884. Be it re-
membered, that in pursuance of notice given by the proper
authorities for this purpose, a majority of the members of
The First Evangelical Lutheran Church of Nebraska City,
Neb., have this day met in convention, and transacted the
following business: The house having been called to order,
Mr. H. H. Bartling was chosen chairman and Mr. A.
Schafer as secretary of this meeting. Thereupon it was
resolved by a unanimous vote of members present to change
the name of the society from First Evangelical Lutheran
Church of Nebraska City, to that of *Die Erste Deutsche
Evangelische Zion's Gemeinde* of Nebraska City. By which
last name this society shall do all its business; and there-
upon it was further resolved by a unanimous vote that the
by-laws and articles of association, rules and regulations of
the said First Evangelical Lutheran Church of Nebraska
City as amended and revised, and as so amended are spread
upon the records of this society, be adopted as the arti-
cles of association, by-laws, rules, and regulations of this
*Die Erste Deutsche Evangelische Zion's Gemeinde* of Ne-
braska City, and the same are hereby so adopted, ratified,
and confirmed. And thereupon it was further resolved
that a substantial embodiment of the provisions of such
articles be attached hereto, and made a part hereof.

" The provisions of said articles are in substance as fol-
lows:

" Article 1 provides, that the name of this congregation
shall be *Die Erste Deutsche Evangelische Zion's Gemeinde
von Nebraska City*. Art. 2 provides, that this congregation

shall adhere to the faith of the Evangelical Christian church (that is Ev. and Lutheran, United and Reformed). Art. 3 provides, that all persons who have been baptized, confirmed, and who declare themselves adherents of the faith of said Ev. church, and otherwise lead a moral and Christian life may become members of this congregation. Art. 4 provides, that the pastor shall be a Christian, law-abiding person, and a member of the Evangelical Synod of North America. The pastor by virtue of his position shall be president of the church council. Art. 5 provides, that the directors and officers of this church shall consist of two elders, two deacons, and two trustees, all of whom shall be elected every two years by a majority vote of the members present at the election. Art. 6 provides, that the church council shall consist of the pastor, elders, deacons, and trustees. Art. 7 provides, that all notices of election shall be given two weeks prior to such election by the church council. Art. 8 provides for amending the constitution and by-laws, and for making additions thereto.

"And after having so adopted said articles as aforesaid, it was resolved that a copy of these proceedings be recorded in the recorder's office of Otoe county in the state of Nebraska, and henceforth this society shall be and is a body corporate under the laws of the state of Nebraska, and shall be known and do business, and hold property for religious purposes only, under the name and style of *Die Erste Deutsche Evangelische Zion's Gemeinde* of Nebraska City, all in the county of Otoe and state of Nebraska; and thereupon the meeting adjourned.

"ALBERT SCHNITKER,  } *Trustees.*
"H. FASTENAU,  }

"H. H. BARTLING,
"*Chairman.*
"A. S. SCHAFER,
"*Secretary of Meeting.*"

The plaintiff also introduced the following in evidence:

" At a meeting of the First Evangelical Lutheran Church held at Nebraska City, January 21st, 1885, the following business was transacted : Presiding officers of this meeting were, Rev. J. W. Kimmel, chairman, G. H. Meyer, clerk.

" The following officers were then duly elected as a ' Board of Trustees ' of the above named congregation to fill vacancy caused by the withdrawal of the former officers, they having united with *Die Erste Deutsche Evangelische Zion's Gemeinde,* as recorded in the county clerk's office of Otoe county, Nebraska, Dec. 20th, 1884, for the unexpired term of office.

" *Trustees,* $\left\{\begin{array}{l}\text{B. H. NOELTING,}\\ \text{F. W. ROTTMANN,}\\ \text{JOHN TETEN,}\\ \text{F. W. PETRING,}\\ \text{G. H. MEYER.}\end{array}\right.$

"REV. J. W. KIMMEL,
　　　　　 " *Chairman.*

" G. H. MEYER,
　　　　　 " *Clerk."*

The testimony on behalf of the defendants fails to deny that on behalf of the plaintiffs, except upon two material points : First, that there is any material change in the doctrines or government of the church. Second, that Rev. Kimmel and the plaintiffs were ejected by force from the church on the night of February 13th, 1885. It will be observed that Sec. 2, Art. VIII. of the constitution of the Evangelical Lutheran church provides that : ". This constitution cannot be altered or improved unless it be at a meeting of the congregation legally called together by the council and made known three months before, at which meeting two-thirds votes of all the members present shall be sufficient for any alterations or improvements." Yet in open defiance of this provision a meeting was called without such notice having been given and an attempt made to change the constitution

of the church, and transfer the church to another denomination. The points of differences in the two churches are sufficiently set out in the testimony and need not be further referred to, except to say that it is apparent that material differences do exist both in matters of belief and in the form of government.

The controlling question in the case is, whether the plaintiffs and their associates or the defendants and their associates constitute the true and legitimate First Evangelical Lutheran Church of Nebraska City. In our view the testimony clearly shows that the plaintiffs and their associates constitute the First Evangelical Lutheran Church at Nebraska City. In determining the question of legitimate succession of a religious society, where a separation has taken place, a court will adopt the rules of such society and enforce its polity in the spirit and to the effect for which it was designed. *Harrison v. Hoyle*, 24 O. S., 254. If this were not so it would be possible for a faction in any church by concerted effort to change its doctrines and form of government.

The leading case upon this subject is the *Attorney General v. Pearson*, 3 Meriv., 409, where it was held that if a fund, real or personal, be given in such a way that the purpose be clearly expressed to be that of maintaining a society of Protestant dissenters, promoting no doctrines contrary to law, it is then the duty of the court to carry such trust into execution and to administer it according to the intent of the founders. In the same case, p. 400, the chancellor says: "Where a congregation becomes dissentient among themselves, the nature of the original institution must alone be looked to as the guide for the decision of the court, and to refer to any other criterion (as to the sense of the existing majority) would be to make a new institution, which is altogether beyond the reach and inconsistent with the duties of the court. The cases of *Cragdallie v. Aikman*, (1 Davis P. C., 1); *Foley v. Wont-*

*ner*, (2 Jacob & Walk., 245); *Leslie v. Birnie*, (2 Russell, 114); *Davis v. Jenkins*, (3 Ves. & Bea., 156), and *Milligan v. Mitchell* (3 Mylne & Craig, 72, and 1 Mylne & Keen, 446), recognize the same principles."

In *M. E. Church v. Wood*, 5 O., 283, where certain members of the Methodist church seceded therefrom, and brought an action to compel a division of the corporate property, their right to recover was denied. The court say, p. 288 : "The efforts of the dissatisfied members are not directed within the church, to effect a reformation in its government and discipline, according to the usage of the society, to conform it to their wishes. They moved off in a body of several hundred and associated themselves not as *the* Methodist Episcopal church, but, as is now claimed for them in argument, a persecuted body, forced from the church by the intolerable tyranny of its government. The body of persons thus separated agreed upon articles of association, differing essentially from the rules governing the Methodist Episcopal church. By these articles of association they have since conducted their affairs, and conducted worship as a distinct church, denying all accountability, alike in the spiritual and corporate power, of the Methodist Episcopal church.

" In this state of facts it is difficult to perceive the ground on which the claim is now advanced, that they remain the Methodist Episcopal church. Those remaining in that church have continued to exercise the corporate functions in conformity with the provisions of the act of incorporation ; and against a body who have acted openly upon other principles, and continued so to do until this time, they must be held in this action, the corporation."

The same principle applies in this case. The fact that these defendants did not move off in a body, but sought to retain possession of the church building does not change the rule. All the testimony tends to show that they have seceded from the Lutheran church, and as such seceders

have no right to the property of the church.    *Kinskern v. Lutheran Churches*, 1 Sandf. Ch., 439.    *Harrison v. Hoyle*, 24 O. S., 254.    *Field v. Field*, 9 Wend., 401. *Gable v. Miller*, 10 Paige, 627.    *S. C.*, 2 Denio, 492. *M. E. Church v. Wood*, 5 Ohio, 283.

The judgment of the district court is reversed, and judgment will be entered in this court ousting the defendants from the possession of such church property and investing the plaintiffs and their associates in the Lutheran church with the possession thereof, and enjoining the defendants or any of them from interrupting or interfering with such possession.

JUDGMENT ACCORDINGLY.

THE other judges concur.